DA 07-0398

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 330

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JEANNIE M. TUOMALA,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 06-082
Honorable David G. Rice, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          James B. Wheelis, Chief Appellate Defender, Helena, Montana
          Cathleen O. Sohlberg, Office of Public Defender, Missoula, Montana


      For Appellee:

          Hon. Mike McGrath, Attorney General; C. Mark Fowler, Assistant Attorney
          General, Helena, Montana

          Cyndee L. Peterson, Hill County Attorney; Gina Bishop, Deputy County
          Attorney, Havre, Montana


                  Submitted on Briefs:  August 6, 2008

                        Decided:  September 23, 2008

Filed:

_____
                      Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Jeannie Tuomala (Tuomala) appeals her conviction in the Twelfth Judicial District, Hill County, for Partner or Family Member Assault in violation of § 45-5-206, MCA, and Resisting Arrest in violation of § 45-7-301, MCA. We affirm.

¶2 We review the following issues on appeal:

¶3 *Did the District Court properly deny Tuomala's motion to dismiss the count of Partner or Family Member Assault on the basis of insufficient evidence?*

¶4 *Did the District Court properly deny Tuomala's motion to dismiss the count of Resisting Arrest on the basis of insufficient evidence?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Janice Wemmer called 911 on June 7, 2006. Wemmer reported that she was watching a woman beating up a man in front of the Town Pump in Havre, Montana. Officers Aaron Wittmer, Jason Barkus, and Dan Waldron responded to the call. Wemmer directed the officers to the street east of the Town Pump. The officers located three people, later identified as Randolph Morsette, Brent Azure, and Jeannie Tuomala. Brent Azure and Jeannie Tuomala are in a relationship and share a child together.

¶6 The officers discovered Tuomala pinning Azure up against the wall. The officers separated Tuomala and Azure. Officer Wittmer spoke with witnesses Janice Wemmer and Stephanie Graves, while Officer Barkus interviewed Tuomala. Officer Wittmer also interviewed Morsette and Azure. Officer Waldron interviewed Matt Pourier, an employee of the Subway across the street. Based upon the information produced by the witnesses and their own observations, the officers arrested Tuomala for partner assault.

¶7    Tuomala refused to cooperate with the officers during the arrest. She first slipped one handcuff off her hand. The officers had to unlock the handcuffs in an attempt to place them properly. Tuomala struggled with the officers when they attempted to replace the handcuffs. She pulled away, disobeyed their orders, and went limp. She fell to her knees. Tuomala also refused to walk after the officers had secured the handcuffs. As a result, the officers had to carry her to the patrol car.

¶8    The State charged Tuomala with Partner or Family Member Assault in violation of § 45-5-206, MCA, and Resisting Arrest in violation of § 45-7-301, MCA. Janice Wemmer testified that she was driving by Pizza Hut with her daughter, Stephanie Graves, when she saw Tuomala and Azure arguing. She pulled over to observe. Wemmer testified that Tuomala hit Azure six or seven times. Wemmer further testified that Azure had crossed the street, followed by Tuomala, who continued to try to hit him. Stephanie Graves also testified that she had seen Azure trying to get away from Tuomala, and had watched Tuomala hit him.

¶9    Randolph Morsette testified that he had been gambling with Tuomala and Azure that evening. Morsette claimed that the couple had argued over ten dollars that Morsette had given Azure. Tuomala started fighting with Azure in the bingo hall. Morsette followed the couple outside where he saw Tuomala hitting Azure in the head. Morsette testified that Azure crossed the street several times to get away from Tuomala, but that Tuomala jerked Azure by the coat and hit him in the head.

¶10    Officer Wittmer testified that Tuomala had Azure up against the wall when he arrived at the scene. Officer Wittmer testified that he noticed injuries around the left side of Azure's

3

neck while interviewing him. Officer Wittmer stated that Azure told him about the source of the injuries, and that he took photographs of Azure's injuries. Officer Wittmer described the injuries for the jury, and testified that, based on his experience, he believed the injuries to be "fresh." Officer Wittmer further testified regarding Tuomala's conduct after he arrested her for partner assault.

¶11 Officer Barkus also testified at trial. He saw Tuomala pinning Azure against the wall by holding his hand up and pushing against his chest and shoulder. Officer Barkus testified that Tuomala told him that she and Azure had been gambling and that she was angry that Azure would not give her some money. Officer Barkus also testified that Tuomala managed to remove one of the handcuffs during her arrest. Officer Barkus described how Tuomala went down to her knees and resisted the officers' efforts to again place her in handcuffs.

¶12 Tuomala moved for a directed verdict of acquittal on both charges at the close of the State's case. Tuomala argued that the State had failed to present sufficient evidence that Azure had sustained "bodily injury." Tuomala also argued that the State had failed to present sufficient evidence that she had used physical force or created a risk of physical injury to a peace officer. The District Court denied Tuomala's motion. The jury convicted Tuomala of both charges.

**STANDARD OF REVIEW**

¶13 This matter came before the trial court on Tuomala's "motion for a directed verdict," now correctly designated a "motion to dismiss for insufficient evidence." *State v. Rosling*, 2008 MT 62, ¶ 21 n. 2, 342 Mont. 1, ¶ 21 n. 2, 180 P.3d 1102, ¶ 21 n. 2. We review *de novo*

4

a district court's denial of a motion to dismiss for insufficient evidence. *Rosling*, ¶ 33. Dismissal for insufficient evidence is appropriate only if, viewing the evidence in the light most favorable to the prosecution, there is not sufficient evidence upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Section 46-16-403, MCA; *Rosling*, ¶ 35.

## DISCUSSION

## ISSUE ONE

¶14 *Did the District Court properly deny Tuomala's motion to dismiss the count of Partner or Family Member Assault on the basis of insufficient evidence?*

¶15 Section 45-5-206(1)(a), MCA, provides that a person commits the offense of partner or family member assault if the person purposely or knowingly "causes bodily injury to a partner or family member." "'Bodily injury' means physical pain, illness, or an impairment of physical condition and includes mental illness or impairment." Section 45-2-101(5), MCA.

¶16 Tuomala contends that the State failed to demonstrate that Azure suffered bodily injury in the form of pain or impairment of physical condition. She further alleges that the State's evidence presented consisted of contradictory eye witness statements.

¶17 Tuomala argues that the failure of Montana law to define "impairment of a physical condition," as used in the definition of "bodily injury," requires this Court to look beyond the plain meaning of the text. In the absence of any Montana definition, Tuomala suggests that the court adopt the legal definition of "impairment" used by the court in *State v. Higgins*, 998

P.2d 222 (Or. App. 2000). The Oregon court determined that the phrase "impairment of physical condition" meant "harm to the body that results in a reduction in one's ability to use the body or a bodily organ for less than a protracted period of time." *Higgins*, 998 P.2d at 224.

¶18   When we interpret a statute, our objective is to implement the objectives the legislature sought to achieve. *Western Energy Co. v. State*, *Dept. of Rev.*, 1999 MT 289, ¶ 11, 297 Mont. 55, ¶ 11, 990 P.2d 767, ¶ 11. If we can determine the intent of the legislature from the plain meaning of the words used in the statute, the plain meaning controls and the Court need go no further and need not apply any other means of interpretation. *Western*, ¶ 11.

¶19   The broad definition of bodily injury does not require us to go outside the statute to determine its meaning. Bodily injury encompasses physical pain or impairment of physical condition. Section 45-2-101(5), MCA. Multiple witnesses testified that they saw Tuomala strike Azure. Officer Wittmer testified that he observed scratches and other injuries on Azure's face and neck. The State introduced photographic evidence of the injuries through Officer Wittmer. Both police officers testified that they saw Tuomala pinning Azure up against the wall.

¶20   Tuomala notes that Azure did not testify that he suffered physical pain. Azure's testimony is not necessary. Section 26-1-501, MCA, permits the trier of fact to make such inferences based on the evidence provided. *State v. Heffner*, 1998 MT 181, ¶ 30, 290 Mont. 114, ¶ 30, 964 P.2d 736, ¶ 30. A person may be convicted on circumstantial evidence alone.

*Rosling*, ¶ 36. Viewing this evidence in a light most favorable to the State, sufficient evidence existed upon which a rational trier of fact could find that Tuomala's actions caused Azure to suffer physical pain or impairment. Section 46-16-403, MCA; *Rosling*, ¶ 35. We conclude that the District Court properly denied Tuomala's motion to dismiss the charge of Partner or Family Member Assault based on insufficient evidence.

**ISSUE TWO**

¶21 *Did the District Court properly deny Tuomala's motion to dismiss the count of Resisting Arrest on the basis of insufficient evidence?*

¶22 Section 45-7-301(1), MCA, provides that a person commits the offense of resisting arrest if he knowingly prevents or attempts to prevent a peace officer from effecting an arrest by: (a) using or threatening to use physical force or violence against the peace officer or another; or (b) using any means which creates a risk of causing physical injury to the peace officer or another. Tuomala argues that the officers did not testify as to how her actions placed them at risk of injury. She further asserts that the State failed to present any evidence of a risk of physical injury to the officers.

¶23 Both arresting officers testified that Tuomala managed to slip one handcuff from her wrist. Officer Wittmer testified that the officers were forced to unlock her handcuffs in an attempt to replace them. Officer Wittmer testified that Tuomala pulled away when they unlocked the handcuffs, resisted, and then went limp and fell to the ground. Officer Barkus testified that Tuomala went down to her knees when they attempted to replace the handcuffs. Officer Wittmer further testified that the officers had to carry Tuomala to the patrol car.

¶24     In *State v. Carter,* 285 Mont. 449, 454, 948 P.2d 1173, 1175 (1997), after administering field sobriety tests, police officers asked the defendant to come to the station for more testing.  The defendant refused and stated that he was going to get in his car and drive home.  The police officers were forced to physically struggle with the defendant to keep him from driving off.  *Carter*, 285 Mont. at 454, 948 P.2d at 1176.  We agreed with the State's argument that "once an officer has to engage in a physical struggle with an arrestee in order to prevent him from driving away, a risk that the officer or another might be physically injured is created."  *Carter*, 285 Mont. at 457, 948 P.2d at 1177.

¶25     Evidence presented at trial indicated that Tuomala's actions forced the officers to engage in a physical struggle with her in order to replace her handcuffs.  The record also indicates that Tuomala's behavior forced the officers to carry her to the patrol car.  Considering the evidence in the light most favorable to the State, a rational trier of fact could have found that Tuomala resisted arrest by creating a risk of physical injury to the officers.  Section 46-16-403, MCA; *Rosling*, ¶ 35.  We conclude that the District Court properly denied Tuomala's motion to dismiss the charge of resisting arrest based on insufficient evidence.

¶26     Affirmed.

                                        /S/ BRIAN MORRIS


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON

8

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER